IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



| | |
|---|---|
| CHICAGO FIRE FIGHTERS UNION, LOCAL 2, | ) ) ) |
| Plaintiff, | ) ) |
| | ) No. 07 C 2102 |
| v. | ) ) Judge Ronald A. Guzmán |
| LT. ROBERT TEBBENS, LT. THOMAS CODY, DANIEL FORTUNA, THOMAS RYAN, DAVID QUINTAVALLE, LT. JOEL BURNS, PETER O'SULLIVAN, LT. PAUL STAMPER, PETER HOULIHAN, and MARC J. MCDERMOTT, Individually and in their Capacities as Officers and Members of Chicago Fire Department Union Local 2, And INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, HAROLD A. SCHAITBERGER, LOUIE WRIGHT, JOSEPH CONWAY and DANNY TODD, Individually and in their Capacities as Officers and Members of The International Association of Fire Fighters, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

## MEMORANDUM OPINION AND ORDER

John Chwarzynski, president of the Chicago Fire Fighters Union Local 2 ("Union"), has filed suit on behalf of the Union against the members of its Executive Board, and the International Association of Fire Fighters and four of its officers ("IAFF defendants"). Plaintiff alleges that defendants violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), federal labor laws, and various state laws by stealing from the Union. Plaintiff appeared before the Court on Friday, April 27, 2007 seeking an order temporarily restraining defendants from conducting a

disciplinary proceeding against Mr. Chwarzynski on Monday, April 30, 2007 at 8:00 a.m. For the reasons set forth below, the motion is denied.

## Subject Matter Jurisdiction

The first question the Court must address is subject matter jurisdiction. Defendants contend that jurisdiction is lacking because they could not, as a matter of law, have committed the RICO predicate acts alleged by plaintiff, embezzlement from a pension or welfare fund in violation of 18 U.S.C. § 664 and embezzlement from a labor union in violation of 29 U.S.C. § 501(c). The Union is not a pension or welfare fund or a labor organization representing private sector employees, the only organizations to which 18 U.S.C. § 664 and 29 U.S.C. § 501(c) apply. Because they could not have committed either predicate act, defendants say, the Court lacks subject matter jurisdiction over plaintiff's suit.

The Court disagrees. As an initial matter, defendants ignore the fact that embezzlement is not the only predicate act plaintiff alleges. It also alleges that defendants committed mail fraud in violation of 18 U.S.C. § 1341, *see* Compl. ¶ 154, a statute that applies to defendants and prohibits conduct that RICO designates as a predicate act. *See* 18 U.S.C. § 1961(1). Thus, even if jurisdiction depended on proper allegations of predicate acts, plaintiff's invocation of the embezzlement statutes would not be fatal.

More importantly, subject matter jurisdiction does not depend on predicate act allegations. Defendants seem to have confused the concepts of constitutional and statutory standing. Plaintiff has standing in the constitutional sense if it suffered a "concrete and particularized" injury that is fairly traceable to defendants' conduct and is likely to be "redressed by a favorable decision." *Lujan*

*v. Defenders of Wildlife,* 504 U.S. 555, 560-61 (1992) (quotations omitted). Plaintiff alleges that the Union has been injured by defendants' misappropriation of its funds, a concrete injury that a lawsuit could redress. Thus, plaintiff has constitutional standing to assert its RICO claims.

Whether it falls within the class of persons entitled to sue under the statute is a different, and non-jurisdictional, question. *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 97 n.2 (1998) (noting that whether plaintiff has a cause of action under the statute is a "merits inquiry," and whether it has "[a] remediable injury in fact," is a question of Article III standing). Defendants' contention that plaintiff has not adequately alleged predicate acts is an attack on its statutory standing, which does not impact the Court's subject matter jurisdiction over this suit.

## Conflict of Interest

Another threshold issue raised by the parties concerns the propriety of Mr. Horwitz's representation of defendants. Because Mr. Horwitz purports to represent the Union, *see* 4/27/07 Hr'g Tr. at 13-14, 18, plaintiff's counsel says he cannot represent the Executive Board defendants, whose interests are adverse to those of the Union, in this suit. This Court's rules of professional conduct prohibit a lawyer from "represent[ing] a client if the representation of that client will be directly adverse to another client unless . . . the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and . . . each client consents after disclosure." LR 83.51.7.

Even if the Executive Board defendants' interests are adverse to those of the Union, a dubious proposition as discussed below, the record shows that both the Union and the Executive Board defendants waived that conflict:

3

> [T]he Executive Board of Local No. 2 directs the attorneys for Local No. 2, the law firm of Sugarman & Horwitz, to provide written notification to Maher of the action taken by the Executive Board's adoption of this Motion.
>
> [T]he law firm of Sugarman & Horwitz shall put Maher on further notice that he and any other attorney proceed at their own risk if they continue with the lawsuit, or institute any other legal proceeding, naming Local No. 2 as a plaintiff, unless Maher has first received written approval from the Executive Board of Local No. 2 to institute such legal proceeding.
>
> [T]he Executive Board of Local No. 2 authorizes and directs the law firm of Sugarman & Horwitz to represent the ten Executive Board members who are named as defendants in the lawsuit.

(Mot. Dismiss, Ex. C, 4/19/07 Union Mot. & Ex. D, 4/19/07 Poll.) Because the Union and the Executive Board defendants have expressly waived any possible conflict, there is nothing improper about Mr. Horwitz's involvement in this suit.

## Temporary Restraining Order

We now turn to the motion for a temporary restraining order ("TRO"). The Court must consider four factors to determine whether a motion for a TRO or preliminary injunction should be granted. *Gendelman v. Glenbrook N. High Sch.*, No. 03 C 3288, 2003 WL 21209880, at *2 (N.D. Ill. May 21, 2003); *see Pelfresne v. Vill. of Williams Bay*, 865 F.2d 877, 882 (7th Cir. 1989). These factors are: (1) "whether the plaintiff has a reasonable likelihood of success on the merits"; (2) "whether the plaintiff will have an adequate remedy at law or will be irreparably harmed if the injunction does not issue"; (3) "whether the threatened injury to the plaintiff outweighs the threatened harm an injunction may inflict on defendant"; and (4) "whether the granting of a preliminary injunction will disserve the public interest." *Pelfresne*, 865 F.2d at 882.

### Likelihood of Success

Based on the arguments of counsel and the evidence the parties submitted, the Court concludes that plaintiff has little likelihood of succeeding on the merits of its case for a number of reasons. First, it is not at all clear that Mr. Chwarzynski is authorized to prosecute this case on the Union's behalf. Arguably, the Union gave him implicit authorization to do so by vesting him with the authority to interpret its by-laws, (*see* Mot. Dismiss, Ex. A, By-laws, Art. VI, Sec. 3A (stating that the Union president "shall interpret such [by]laws and decide any disputes or controversies concerning their meaning or application which shall be appealed to him"), which are silent on the topic of filing litigation. Even if that is true, however, the by-laws do not render the president's interpretations absolute. Rather, they state that his interpretations "shall be final and binding unless changed on further appeal to the Executive Board or pursuant to International Association of Fire Fighters' Constitution & By-Laws." (*Id.*) Apparently, that is what happened here on April 19, 2007 when the Executive Board adopted a motion that states:

> Chwarzynski is hereby directed and instructed to cause the immediate withdrawal and dismissal of the lawsuit, and . . . to immediately instruct attorney James Maher to take all steps to cause the lawsuit to be withdrawn and dismissed.
>
> Chwarzynski is hereby directed and instructed to refrain from commencing any other legal proceeding in the name of Chicago Fire Fighters Union Local No. 2 without first seeking and securing authorization and approval from the Executive Board of Local No. 2.

(*See* Mot. Dismiss, Ex. C, 4/19/07 Mot & Ex. D 4/19/07 Poll.) Thus, even if Mr. Chwarzynski had the authority to file this suit, that authority appears to have ended on April 19, 2007.

Second, even if the lawsuit is authorized, plaintiff has not demonstrated even a negligible likelihood of succeeding on its federal claims. Counts I-III of the complaint charge defendants with

5

violations of RICO. As noted above, however, defendants could not have committed two of the three predicate acts – embezzlement from a welfare fund and a union in violation of 18 U.S.C. § 664 and 29 U.S.C. § 501(c), respectively – because the Union, which represents only public employees, is not an organization to which either statute applies. *See* 18 U.S.C. § 664 (prohibiting embezzlement from any employee welfare plan or pension plan as defined by ERISA); 29 U.S.C. § 1002(1), (2) (defining welfare and pension plans for ERISA); 29 U.S.C. § 501(c) (prohibiting embezzlement from labor organizations by union officers); 29 U.S.C. § 402(e), (i) (excluding public employee unions from the definition of "labor organization" for the purposes of section 501(c)). Moreover, though defendants are subject to the mail fraud statute, plaintiff has not alleged, either generally or with the specificity required by Federal Rule of Civil Procedure 9(b), even one instance of mail fraud, let alone offered facts to suggest that any such fraud occurred.

Plaintiff fares no better with the Count IV claims, which invoke various provisions of federal labor law, including 29 U.S.C. §§ ("sections") 185, 411(a)(4), 412, 501(c) and 158(b)(6). Section 185 codifies the right of unions to sue in federal court for "violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce," but does not create any substantive rights. 29 U.S.C. § 185(a). Sections 411(a)(4), 412 and 501(c), which are provisions of the Labor Management Relations and Disclosure Act ("LMRDA"), do not apply to labor organizations like the Union that represent only public sector employees. *See* 29 U.S.C. § 402(e), (i) (defining "labor organization" for LMRDA as "any organization of any kind . . . in which employees participate and which exists for the purpose . . . of dealing with employers" and excluding "any State or political subdivision thereof" from the definition of "employer"); *See also Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996) (per curiam) (noting that "[t]he circuit

courts which have addressed the issue have uniformly held that the LMRDA does not apply to unions which represent only public sector employees.").[1] Similarly, section 158(b)(6), which makes it an unfair labor practice for a union "to cause ... an employer to pay ... any money ... for services which are not performed" excludes states and their political subdivisions from the definition of "employer." *See* 29 U.S.C. § 152(2). Because plaintiff has neither alleged nor offered facts that suggest any of these provisions apply, it has not demonstrated any likelihood of success on the merits of these claims.

The fact that plaintiff has a less than *de minimis* chance of succeeding on the federal claims, also reduces its chance of prevailing on the state law claims to nearly zero. The Court has discretion, which it routinely exercises, to decline to exercise jurisdiction over supplemental state law claims in a suit when all federal claims have been dismissed. *See* 28 U.S.C. § 1367(c)(3). There is no independent jurisdiction over the state law claims. *See* 28 U.S.C. § 1332(a) (setting forth requirements for diversity jurisdiction); *Loss v. Blankenship*, 673 F.2d 942, 949 (7th Cir. 1982) ("The citizenship of a union for diversity purposes is the citizenship of each of its members."); Chicago, Ill. Code § 2-152-340 (stating residency requirement for city employees), *available at*, http://www.amlegal.com/nxt/gateway.dll/Illinois/chicago_il/title2citygovernmentandadministrati on/chapter2-152officersandemployees?f=templates$fn=altmain-nf.htm$3.0#JD_ch02_152.x1-2-

---

[1] Even if the LMRDA did apply to the Union, plaintiff would still not have a claim under sections 411(a)(4) and 412. Those sections codify the rights of labor union members to institute legal action against their unions. In this case, however, Mr. Chwarzynski is not suing on his own behalf as a Union member, but on behalf of the Union itself. Thus, sections 411(a)(4) and 412 would not apply, even if the Union were a "labor organization" within the meaning of the LMRDA.

7

152-340. Therefore, the Court would not likely retain supplemental jurisdiction over the state law claims if the federal claims were dismissed.

Even if the Court retained jurisdiction, however, plaintiff would have little chance of winning on the state law. In Count V, plaintiff alleges that defendants violated the false claims act of the Chicago Municipal Code. That ordinance empowers private parties to "bring a civil action against a city contractor for [submitting a false claim] . . . . in the name of the city" but excludes from the definition of "city contractor" anyone "who is a city official or employee or was a city official or employee at the time of the alleged conduct." Chicago, Ill. Code § 1-22-030, *available at*, http://www.amlegal.com/nxt/gateway.dll/Illinois/chicago_il/title1generalprovisions/chapter1-22f alseclaims?f=templates$fn=altmain-nf.htm$q=%5Band%3Afalse%20claims%5D%20$x=server$ 3.0#LPHit1. Plaintiff has not filed this claim in the city's name and asserts it against the Executive Board defendants, who are not city contractors within the meaning of the ordinance. Thus, it has a less-than-negligible chance of succeeding on this claim.

The same is true for the Count VI claims. In that count, plaintiff asserts state law breach of fiduciary duty claims against all of the defendants. Plaintiff alleges that the Union's contract with the City, and its constitution and by-laws create the fiduciary relationship between it and the Executive Board defendants, and the IAFF's constitution creates a fiduciary relationship between the Union and the IAFF defendants. (Compl., Count VI ¶¶ 148, 150.) Plaintiff did not, however, provide the Court with any of those documents or any other legal basis for concluding that such duties exist. It has not, therefore, demonstrated even a slight chance of succeeding on this claim.

In Count VII, plaintiff alleges that all of the defendants are liable for common law fraud. According to plaintiff, the victim of the Executive Board defendants' fraud was the City of Chicago.

8

(*See id.* ¶ 148.) The City is not, however, a party to this suit, and plaintiffs are generally prohibited from asserting "the legal rights or interests of third parties." *FMC Corp. v. Boesky*, 852 F.2d 981, 988 (7th Cir. 1988). Plaintiff has offered no reason for the Court to conclude that this case is an exception to that rule.

The fraud claims against the IAFF defendants are equally weak. To prevail on a fraud claim, plaintiff must prove that the IAFF defendants made a statement of material fact that they knew was false, they intended the Union to rely on the statement, and the Union did so and was damaged as a result. *Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 591 (Ill. 1996).[2] Plaintiff bases this claim on: (1) the IAFF's statement in its dismissal of Mr. Chwarzynski's charge against defendant Tebbens that the Union's audit committee approved the expenditures that Mr. Chwarzynski contends are fraudulent (Compl., Count VII ¶¶ 124-25, 149); (2) defendant Schaitberger's statement in response to Mr. Chwarzynski's complaint about the IAFF's handling of his complaint against defendant Tebbens that the IAFF does not get involved in local disputes (*id.* ¶¶ 127, 149); (3) IAFF's statement in its denial of Mr. Chwarzynski's motion to dismiss the charges asserted against him that the pre-trial review board is not empowered to weigh evidence or assess credibility (*id.* ¶¶ 130, 149); and (4) IAFF's statement, in an unidentified forum, that the charges against Mr. Chwarzynski are sufficiently specific and were timely and properly served upon him (*id.* ¶ 150). Even if defendants made these statements and knew when they did so that the statements were false, issues the Court does not decide, plaintiff has offered no facts to suggest that the Union relied to its detriment on any of them. Absent evidence of reliance, "an essential element of a fraud case," plaintiff has not

---

[2]The parties do not argue that any other law applies, so the Court analyzes this count under Illinois law.

demonstrated a reasonable likelihood of success on its fraud claims. *Dexter Corp. v. Whittaker Corp.*, 926 F.2d 617, 619 (7th Cir. 1991).

### Inadequate Remedy/Irreparable Harm

Next, the Court considers whether the Union has "an adequate remedy at law or will be irreparably harmed if the injunction does not issue." *See Pelfresne*, 865 F.2d at 882. To establish irreparable harm, the Union must show that denial of its TRO motion "will cause [it] to suffer some injury other than a readily quantifiable monetary loss." *See Hamlyn v. Rock Island County Metro.*, 960 F. Supp. 160, 164 (C.D. Ill. 1997).

According to plaintiff, if the Court denies the motion for TRO, Mr. Chwarzynski will be removed as the Union's president by the afternoon of April 30, 2007. (Mot. TRO at 8.) At this point, that claim is pure speculation. As counsel for the IAFF explained at the hearing, the trial board is empowered to impose a variety of sanctions ranging from a cease and desist order to expulsion from the Union. (*See* 4/27/07 Hr'g Tr. at 53.) Thus, even if Mr. Chwarzynski is found guilty of the charges, another speculative notion, he will not necessarily be removed from office. This sort of speculation does not constitute irreparable harm for a TRO.

Moreover, even if there were evidence that Mr. Chwarzynski's removal was imminent, we still fail to see how the Union would be irreparably harmed by that action. Plaintiff says that in Mr. Chwarzynski's absence, the Executive Board defendants will be able to: (1) disparage and undermine Mr. Chwarzynski's reputation; (2) take over the day-to-day operations of the Union; (3) conceal documentary evidence of their misconduct; and (4) continue their ongoing acts of misconduct. (*Id.* at 35-37; Mot. TRO at 9.)

The first asserted harm impacts Mr. Chwarzynski, individually, not the Union as an entity. Though Mr. Chwarzynski might like to protect his reputation from what he views as unfounded attacks, he is not a party to this suit. As a result, unless there is some evidence that the Union will be irreparably harmed by injury to Mr. Chwarzynski's reputation, that alleged harm does not support the Union's request for a TRO.

Neither do the other asserted harms. The Union's by-laws already vest the Executive Board with control of the Union's day-to-day operations: "The membership assembled at regular or special meetings shall direct the activities of the union . . . . Between meetings, all administrative, executive and judicial powers of the Chicago Fire Fighters Union, shall be vested in the Executive Board . . . ." (Mot. Dismiss, Ex. A, Constitution & By-Laws Chicago Fire Fighters Union, Art. I, Sec. 3A.) Consequently, the Executive Board defendants will control the Union's daily operations, and thus, be able to continue their allegedly unlawful activities and conceal evidence of them, whether or not Mr. Chwarzynski continues in his post. Because the Union has offered no facts to suggest that, solely because of his status as president, Mr. Chwarzynski can stave off further wrongdoing, his removal from that office would not constitute irreparable harm, even if there were evidence that his removal was imminent.

## Balance of Harms & Public Interest

As noted above, plaintiff has not shown that it will suffer any harm if the disciplinary hearing against Mr. Chwarzynski is not enjoined. If it is enjoined, however, the defendants will be prevented from completing disciplinary proceedings that have been pending for the last six months and resolving this dispute, which has split the Union's Executive Board into two camps. Granting the

11

TRO would allow the situation to fester and distract Union management from its mission of "promot[ing] an [sic] harmonious and progressive work environment between employer and employees in order to better serve the citizens of Chicago whom we have sworn to protect," *see* http://www.iaff-local2.org, which would hurt not only these defendants, but all of the fire fighters and citizens of Chicago.

## Conclusion

After considering the arguments and evidence offered by the parties, the Court concludes that plaintiff has no reasonable likelihood of success on the merits of its claims and will not suffer irreparable harm if the TRO does not issue, the balance of harms favors defendants and denying the TRO is in the public interest. Accordingly, plaintiff's motion for a temporary restraining order is denied.

**SO ORDERED.**  ENTERED: 4/30/07

HON. RONALD A. GUZMAN
United States District Judge